# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# CIVIL NO. 2:11CV15-MR-DSC

| | |
|---|---|
| WENDY M. WEEKS,<br>      Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>      Defendant. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Judgment on the Pleadings" and "Memorandum in Support ..." (both document #15) filed October 18, 2011; and Defendant's "Motion for Summary Judgment" (document #16) and "Memorandum in Support... " (document #17), both filed November 18, 2011.

On March 19, 2012, this case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Judgment on the Pleadings be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on August 29, 2006, alleging that she became disabled on May 19, 2005. (Tr. 10, 120-22, 125-31). Plaintiff's application was denied initially and on reconsideration. A

hearing was held on June 18, 2009. (Tr. 34-68).

On October 7, 2009, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr. 7-23). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ also found that Plaintiff suffered from a neck fusion, fibromyalgia, obesity, anxiety, and depression (Tr. 12), which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform medium work,[2] could frequently balance, climb, stoop, kneel, crawl, crouch, reach overhead, and feel, but had to avoid concentrated exposure to hazards. She was restricted to completing simple one to two-step tasks and working in a low-stress environment with occasional public contact. (Tr. 15). The ALJ then concluded that Plaintiff could not perform any of her past relevant work. (Tr. 20).

The ALJ relied upon the Medical-Vocational Guidelines and the testimony of a vocational expert ("V.E.") to conclude that Plaintiff could have performed other work existing in the national economy. (Tr. 20-22). The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 21-22).

By notice dated February 11, 2011, the Appeals Council denied Plaintiff's request for

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Medium" work is defined in 20 C.F.R. § 404.1567(c) as follows:
> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work

2

further administrative review.

Plaintiff filed the present action on April 14, 2011. Plaintiff argues that the ALJ erred when he concluded that her Chiari's malformation was not a severe impairment. She also assigns error to his assessment of her credibility and his determination that Dr. Flechas's opinion was not entitled to controlling weight. See Plaintiff's "Memorandum ..." at 24-30 (document #15). Plaintiff argues that as a result of those errors, the ALJ's formulation of her RFC, his reliance on the V.E.'s testimony, and his finding of "not disabled" are not supported by substantial evidence. The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[3] Plaintiff contends initially that the ALJ should have found her Chiari malformation to be a severe impairment. In discussing the evidence regarding Plaintiff's neck fusion, the ALJ noted that she underwent surgery for an Arnold-Chiari malformation and suboccipital partial craniotomy in February 2008. (Tr. 12). The ALJ considered Plaintiff's Chiari malformation as part of her impairment from the neck fusion. . The ALJ found that impairment to be severe and included it in his formulation of Plaintiff's RFC. Accordingly, this assignment of

---
[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

error should be overruled.

Plaintiff next argues that the ALJ's assessment of her credibility is not supported by substantial evidence. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's neck fusion, fibromyalgia, obesity, anxiety, and depression – which could be expected to produce some of the pain claimed by Plaintiff. Accordingly, the ALJ found Plaintiff to have met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not consistent with the objective evidence in the record.

The ALJ provided several reasons for discounting Plaintiff's subjective complaints.

In evaluating Plaintiff's credibility, the ALJ considered all the applicable evidence in the record. He did not require the presence of objective medical evidence in determining the intensity and persistence of her pain, but rather, "specifically considered" the factors specified by the regulations. (Tr. 15-16). The ALJ also noted that Fourth Circuit precedent allowed him to consider comments such as the claimant was "doing well," was "in no acute distress," and her symptoms were "episodic in nature." There were also inconsistencies between her statements and her medical history. (Tr. 16) (citing Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994)). The ALJ went on to find that Plaintiff informed her provider at Smoky Mountain Counseling Center on September 7, 2007, February 12, 2008, May 1, 2008, and July 29, 2008, that she was doing well. Dr. Rosner made the same assessment on April 14, 2008. (Tr. 16). The ALJ found that Dr. Smith stated that Plaintiff was in no acute distress on February 12, 2007. Gabriel Peterson, P.T., concluded that there was no particular dermatomal or cutaneous nerve pattern to her complaints of tingling and numbness in the left upper extremity. (Tr. 16). The ALJ also referenced witnesses' hearing testimony , Plaintiff's statements regarding the location of her pain, her treatment, her functional limitations, her activities of daily living, and the side effects from her medication. (Tr. 16-17).

After considering all of the evidence in the record, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. However, her statements concerning the intensity, persistence, and limiting effect of her symptoms were not credible to the extent that they were inconsistent with a Residual Functional Capacity ("RFC") for a range of medium work. (Tr. 15, 17). In reaching that determination, the ALJ discussed the evidence that was inconsistent with Plaintiff's claim of disability. The ALJ noted that while Plaintiff testified that she collected unemployment benefits, the filing of an application for benefits evidences the applicant's ability and willingness to work. (Tr. 20, 40). The ALJ treated

6

Plaintiff's application for unemployment benefits as "some evidence" negating her claim for disability, but it was not the sole basis for the denial of her application. (Tr. 20).

The ALJ determined that statements by Plaintiff and her mother about her impairments and their impact on her ability to work were not entirely credible in light of Plaintiff's description of her activities and lifestyle, the degree of medical treatment she required, the reports of her examining and treating physicians, and the examination findings. (Tr. 20). The ALJ did not credit Plaintiff's assertion that she had numbness and pain two to three times a day for approximately fifteen minutes, since she informed Dr. Flechas that her pain was better on June 19, 2007. (Tr. 20). The ALJ also found that while Plaintiff testified that she experienced dizziness and constipation as side effects from her medication, she reported to Tassie Masters, A.N.P., that she did well on her medication. (Tr. 20). The ALJ properly considered all of the medical evidence (Tr. 12-21). See Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987) (an ALJ's review of the medical records demonstrated consideration of the combined effects of impairments despite the fact that each element of the record was discussed individually).

The ALJ further considered Plaintiff's daily activities and found that her ability to raise three children, two of whom have significant impairments, was inconsistent with the severe limitations she alleged. (Tr. 20). The ALJ added that the severe pain and limitations that Plaintiff claimed were inconsistent with her use of a computer to play games, look up things for her children, and send emails. He also considered her ability to read, attend school activities, cook, do dishes and laundry, vacuum, clean her bathroom, and travel. (Tr. 20-21).

Although Plaintiff challenges the ALJ's RFC determination generally, her main argument centers on the ALJ's evaluation of Dr. Flechas' opinion. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35

7

(4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). A treating source's opinion that rests upon a claimant's less-than-candid subjective complaints is entitled to minimal probative value. See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005). Indeed, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Christian v. Apfel, No. 98-1673, 168 F.3d 481, 1998 WL 911720, at *2 (4th Cir. Dec. 31, 1998) (per curiam, unpublished) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992)) (internal citation omitted).

On April 22, 2009, Dr. Flechas completed a Fibromyalgia Residual Functional Capacity Questionnaire. (Tr. 778-784). He concluded that Plaintiff would frequently experience pain severe enough to interfere with the attention and concentration needed to complete simple tasks, and that she was incapable of performing even low-stress jobs. (Tr. 781). Dr. Flechas also opined that Plaintiff could sit and stand/walk for less than two hours each in an in eight-hour day, and that she needed to walk every fifteen minutes for five minutes, shift positions at will, and take unscheduled breaks every ten to fifteen minutes. (Tr. 781-782). The doctor further found that Plaintiff could rarely twist, stoop, crouch, climb stairs, or lift less than ten pounds. He also found that she could

8

not climb ladders, had significant manipulative limitations, and would miss more than four days of work a month. (Tr. 783-784). Dr. Flechas added that Plaintiff's symptoms and limitations were present since May 19, 2006. (Tr. 784).

The ALJ noted Dr. Flechas' assessment in the hearing decision, but concluded that his determinations were not credible with respect to Plaintiff's ability to perform work-related activities. (Tr. 19). In reaching that finding, the ALJ determined that Dr. Flechas' conclusions were inconsistent with the objective medical findings and the treating progress notes of record. (Tr. 19). The ALJ noted that Plaintiff reported she walked four times a week for exercise in a February 2009 Patient Questionnaire for Dr. Rosner. (Tr. 19). The ALJ determined that Dr. Flechas' conclusions were not supported by other objective findings. Plaintiff's right wrist x-ray, gait, neurological findings, extremities, sensation, reflexes, and strength were all normal. She walked easily, and reported on February 4, 2009, that she was doing much better than a year ago. (Tr. 19). The ALJ further noted that Plaintiff was able to care for a sixteen year-old with bipolar disorder and a six year-old with attention deficit hyperactivity disorder. On numerous occasions she reported that she was doing well or extremely well, and other providers noted that she appeared healthy. (Tr. 19). Based on all of this evidence, the ALJ did not accept Dr. Flechas' opinion regarding Plaintiff's RFC. (Tr. 19).

Plaintiff also argues that the ALJ gave greater weight to the state agency physicians' opinions even though those doctors did not review portions of medical evidence. The ALJ acknowledged that Dr. Linster based her opinion on evidence from January through June 2007, and that Dr. Gardner based his conclusion on evidence through January 2007. (Tr. 19). The ALJ reviewed all of the evidence and concluded that the state agency physicians' opinions were consistent with the entire medical record. Thus there was no error in the ALJ's evaluation of their

9

assessments. (Tr. 19-20); McCuller v. Barnhart, No. 02-30771, 2003 WL 21954208, at **4 n.5 (5th Cir. August 15, 2003) (holding that the ALJ did not err in relying upon the state agency physician's opinion even where the doctor did not have the benefit of all the treatment notes, as the ALJ considered those notes).

Finally, Plaintiff argues that as a result of the alleged errors discussed above, the ALJ's formulation of her RFC, his reliance on the V.E.'s testimony, and finding of "not disabled" are not supported by substantial evidence. Having concluded that the ALJ's treatment of Plaintiff's impairments, her subjective complaints, and Dr. Flechas' opinion are supported by substantial evidence, this argument also fails.

Although the medical records establish that the Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from her combination of impairments, but was not disabled.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Judgment on the Pleadings" (document #15) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #16) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Martin Reidinger.

**SO RECOMMENDED AND ORDERED**.

Signed: March 27, 2012

David S. Cayer
United States Magistrate Judge